July 28, 2008

U.S. District Court
District of Columbia
1834 E. Barrett Prettyman U.S. Courthouse
333 Constitution Ave., N.W.
Washington, D.C. 20001-2802

**FILED**

JUL 3 1 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

RE:  U.S.A. v. KENYA N. YOKLEY
     E.D.PA. # 08-972-M, D.C.# 08-CR-213

Dear Clerk:

We herewith enclose the original record, together with a certified copy of the docket entries, in the above captioned case which has been transferred to your District pursuant to Rule 5c.

Kindly acknowledge receipt on the copy of the letter provided.

Very truly yours,

MICHAEL E. KUNZ
Clerk of Court

By:

Mark Ciamaichelo, Deputy Clerk

---

Received above material or record file this    day of        ,

Signature: _____
Date: _____

crf1

CLOSED

# United States District Court
## Eastern District of Pennsylvania (Philadelphia)
### CRIMINAL DOCKET FOR CASE #: 2:08-mj-00972 All Defendants
### Internal Use Only

Case title: USA v. YOKLEY

Date Filed: 07/23/2008
Date Terminated: 07/28/2008

Assigned to: Unassigned

**Defendant (1)**

**KENYA N. YOKLEY**
*TERMINATED: 07/28/2008*

represented by **KAI N. SCOTT**
FEDERAL DIVISION DEFENDER'S
ASSOC OF PHILA
SUITE 540 WEST
CURTIS CENTER
INDEPENDENCE SQUARE WEST
PHILADELPHIA, PA 19106
215-928-1100
Email: kai_scott@fd.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Public Defender or
Community Defender Appointment*

**Pending Counts**

None

**Highest Offense Level (Opening)**

None

**Terminated Counts**

None

**Highest Offense Level (Terminated)**

None

**Complaints**

None

**Disposition**

**Disposition**

**Disposition**

A TRUE COPY CERTIFIED TO FROM THE RECORD
DATED :
ATTEST:
DEPUTY CLERK, UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

**Plaintiff**

**USA**                    represented by **JOSEPH J. KHAN**
                           US ATTORNEY'S OFFICE
                           615 CHESTNUT STREET
                           SUITE 1250
                           PHILADELPHIA, PA 19106
                           215-861-8562
                           Fax: 215-861-8497
                           Email: joseph.khan@usdoj.gov
                           *LEAD ATTORNEY*
                           *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 07/23/2008 | 1 | Minute Entry for proceedings held before MAGISTRATE JUDGE ELIZABETH T. HEY: Initial Appearance in Rule 5(c)(3) Proceedings as to KENYA N. YOKLEY held on 7/22/08. The Government and Defense have agreed to Conditions of Release. See attached conditions of release order. Defendant stipulated that he was the person named in the Indictment from the District of Columbia. ATTORNEY JOSEPH J. KHAN for USA, KAI N. SCOTT for KENYA N. YOKLEY ADDED IN CASE. Signed by Judge Elizabeth T. Hey.Court Reporter ESR.(mac, ) (Entered: 07/23/2008) |
| 07/23/2008 | 2 | CJA 23 Financial Affidavit filed by KENYA N. YOKLEY. (mac, ) (Entered: 07/23/2008) |
| 07/23/2008 | 3 | WAIVER of Rule 5(c)(3) Hearing filed by KENYA N. YOKLEY. (mac, ) (Entered: 07/23/2008) |
| 07/23/2008 |  | O/R Bond Entered as to KENYA N. YOKLEY in amount of $ 100,000. (mac, ) (Entered: 07/23/2008) |
| 07/23/2008 | 4 | ORDER SETTING CONDITIONS OF RELEASE AS TO KENYA N. YOKLEY (1) THAT DEFENDANT IS RELEASE ON BAIL IN THE AMOUNT OF $100,000 O/R, ETC. Signed by MAGISTRATE JUDGE ELIZABETH T. HEY on 7/22/08.7/23/08 Entered and Copies Mailed, E-Mailed. (mac, ) (Entered: 07/23/2008) |
| 07/23/2008 | 5 | ORDER HOLDING DEFENDANT TO ANSWER OR APPEAR IN DISTRICT OF PROSECUTION OR DISTRICT HAVING PROBATION JURISDICTION AS TO KENYA N. YOKLEY THAT THE DEFENDANT BE HELD TO ANSWER IN THE U.S. DISTRICT COURT FOR THE DISTRICT OF COLUMBIA; AND SHALL APPEAR AT PROCEEDINGS AS REQUIRED,ETC. Signed by MAGISTRATE JUDGE ELIZABETH T. HEY on 7/22/08.7/23/08 Entered and Copies Mailed, E-Mailed. (mac, ) (Entered: 07/23/2008) |
| 07/28/2008 |  | Rule 5(c) Transfer to the District of Columbia as to KENYA N. YOKLEY. (mac, ) (Entered: 07/28/2008) |

| 07/28/2008 | | (Court only) ***Case Terminated as to KENYA N. YOKLEY (mac, ) (Entered: 07/28/2008) |

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### BAIL STATUS AND ORDER

___ INTERPRETER NEEDED        :      R40 IA/AC

                                          July 22, 2008

Date of Arrest: 7/19/08          :      ESR OPERATOR: Mike Owens

UNITED STATES OF AMERICA           AUSA Joseph Khan

     v.                     :      Magistrate No: 08-972-M

KENYA N. YOKLEY             Kai Scott
                                        [] CJA Appointed
                                        [] Retained
                                        [X] Defenders' Assn. Apptd.

*(stamp)* FILED JUL 2 3 2008 MICHAEL E. KUNZ, Clerk By _____ Dep. Clerk

After hearing held this day pursuant to the Federal Rules of Criminal Procedure, or after hearing pursuant to government's motion, the bail status as to the above-named defendant is as follows:

         [] The Government's Motion for Temporary Detention is Granted.  A detention hearing and  are scheduled for .

         [] For the reasons stated in open court, the Defendant stipulated to [] probable cause and/or [] pretrial detention.

         [] The Government's Motion for Pretrial Detention is Granted.  The Defendant is
                 detained pending further proceedings.

         [] The Government's Motion for Pretrial Detention is Denied.  The court find that the attached conditions of release will reasonably assure the defendant's appearance in court and the safety of the community.
                 See attached Conditions of Release Order.

         [X] The Government and Defense have agreed to conditions of release.
                 See attached Conditions of Release Order.

         [X] Other - Defendant stipulated that he was the person named in the Indictment from the District of Columbia.

*[] AFTER A HEARING, PROBABLE CAUSE WAS FOUND BY THE COURT.*
*[] PLEA:  NOT GUILTY TO ALL COUNT(S).  Counsel have 10 days to file pretrial motions.*

         BY: _____

         ELIZABETH T. HEY
         UNITED STATES MAGISTRATE JUDGE

**TIME IN COURT  6  MINUTES**

(Form Revised December, 2007)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

### Holding a Criminal Term
### Grand Jury Sworn in on November 15, 2007

| | |
|---|---|
| UNITED STATES OF AMERICA : | CRIMINAL NUMBER: CR-08-213 |
| : | Mag No. 08-389 |
| v. : | GRAND JURY ORIGINAL |
| : | |
| NAIBEYE KOUMBAIRIA, AKA BEE, : | VIOLATIONS: |
| AKA NATBEYE KOUMBAIRIA, AKA : | |
| BRIAN COUILABLY, : | 18 U.S.C. § 1344 (Bank Fraud) |
| AKA NAIBEYE KOOMBAIRIA, : | 18 U.S.C. § 1343 (Wire Fraud) |
| AKA BRI COUILBALY, : | 18 U.S.C. § 1349 (Conspiracy) |
| AKA NAIBEYE EMMANUEL : | 18 U.S.C. § 2 (Causing an Act to be Done; |
| KOUMBAIRIA; : | Aiding and Abetting) |
| WILLIAM K. GLAY; : | 18 U.S.C. § 513 (Uttering the Securities of |
| EDWIN T. TANTOH, AKA : | a Private Entity) |
| HOLYFIELD; : | 18 U.S.C. § 982(a)(2) & 28 U.S.C. § 2461(c) |
| MELVIN C. JOHNSON, AKA ERIC : | (Criminal Forfeiture) |
| SULLIVAN, AKA MALIK JOHNSON; : | |
| CARL I. COLEMAN; AND : | |
| KENYA N. YOKLEY : | |
| AKA KENYA T. YOKLEY : | |
| : | |
| Defendants. : | |

United States District Court
For the District of Columbia
A TRUE COPY
NANCY MAYER WHITTINGTON, Clerk

By _____
Deputy Clerk

**FILED IN OPEN COURT**

JUL 17 2008

CLERK, U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

BATES, J. JDB

## INDICTMENT

The Grand Jury charges that:

## COUNT ONE – CONSPIRACY

At all times material to this Indictment:

## INTRODUCTION

### The Defendants

1. Defendant NAIBEYE KOUMBAIRIA, AKA BEE, AKA NATBEYE KOUMBAIRIA,

AKA NAIBEYE KOOMBAIRIA, AKA BRIAN COUILABLY, AKA BRI COUILBALY, AKA

Case Related To _07-217_ _____

NAIBEYE EMMANUEL KOUMBAIRIA (hereinafter "KOUMBAIRIA") was a resident of the District of Columbia.

2. Defendant WILLIAM GLAY (hereinafter "GLAY") was a resident of Montgomery County in the state of Maryland.

3. Defendant MELVIN C. JOHNSON, AKA ERIC SULLIVAN, AKA MALIK JOHNSON (hereinafter "JOHNSON") was a resident of Prince George's County in the state of Maryland.

4. Defendant EDWIN TANTOH AKA HOLYFIELD (hereinafter "TANTOH") was a resident of Montgomery County in the state of Maryland.

5. Defendant CARL I. COLEMAN (hereinafter "COLEMAN") was a resident of Montgomery County in the state of Maryland.

6. Defendant KENYA YOKLEY (hereinafter "YOKLEY") was a resident of Prince George's County in the state of Maryland.

### The Banks

7. AM South Bank was a financial institution whose principal place of business was in Memphis, Tennessee, whose assets were insured by the Federal Deposit Insurance Corporation.

8. Bank of America was a financial institution whose principal place of business was in Charlotte, North Carolina, whose assets were insured by the Federal Deposit Insurance Corporation.

9. BB&T Bank was a financial institution whose principal place of business was in Wilson, North Carolina, whose assets were insured by the Federal Deposit Insurance Corporation.

10. CitiBank was a financial institution whose principal place of business was in San Antonio, Texas, whose assets were insured by the Federal Deposit Insurance Corporation.

11. Manufacturers and Traders Trust Company Bank (hereinafter M&T Bank) was a

financial institution whose principal place of business was in Buffalo, New York, whose assets were insured by the Federal Deposit Insurance Corporation.

12. Provident Bank was a financial institution whose principal place of business was in Baltimore, Maryland, and whose assets were insured by the Federal Deposit Insurance Corporation.

13. SunTrust Bank was a financial institution whose principal place of business was in Atlanta, Georgia, and whose assets were insured by the Federal Deposit Insurance Corporation.

14. United Bank was a financial institution whose principal place of business was in Vienna, Virginia, and whose assets were insured by the Federal Deposit Insurance Corporation.

15. Wachovia Bank was a financial institution whose principal place of business was in Charlotte, North Carolina, and whose assets were insured by the Federal Deposit Insurance Corporation.

<u>Other Entities</u>

16. Certegy is a subsidiary of Fidelity National Information Services, a provider of financial services including core financial institution processing such as check authorization. Certegy utilizes artificial intelligence modeling, neural networks, and other state-of-the-art technology to deliver services that reduce the risk of check fraud, among other things. In exchange for a percentage of each check cashed whose authenticity is verified through Certegy, Certegy enters into agreements with various retail establishments whereby it becomes the guarantor of checks cashed using its services. Certegy's principal place of business is at 11601 Roosevelt Boulevard, St. Petersburg, Florida, where its main computer frame is located. In order to minimize the risk of accepting as payment a personal check by retail establishments, Certegy established the following procedures:

a. When a customer presents a personal check to the retail establishment with which Certegy had an agreement, the cashier must obtain a driver's license or other similar mode of identification from the customer and transmit that number by means of a computer to Certegy.

b. Certegy maintains a list of driver's licenses and other identification numbers that have been "flagged" due to previous submission of valueless checks. If the number submitted by the retail establishment's cashier is registered with Certegy as being "flagged," Certegy communicates by computer with the retail establishment and advises that the check should not be accepted.

c. Similarly, if the number has not been "flagged," Certegy communicates by computer with the retail establishment to notify the cashier that the transaction has been approved by Certegy and that the check can be accepted.

d. In those instances where Certegy has agreed to be the guarantor, Certegy is liable for paying the cost of the check to the retail establishment if it turns out that there are insufficient funds or that the check was counterfeit.

17. Advantage Technical Services (hereinafter "Advantage") is a small service, sales, and business supply business operating in Silver Spring, Maryland. The business is currently in its twentieth year of operation. One of the two co-owners of Advantage is Louis Buckner.

a. Among many other business supplies, Advantage sold re-usable cartridges containing the special ink used to print the unique characters found at the bottom of checks (comprising usually the bank routing number, the account number on which the check is drawn, and the check number). This magnetic ink character recognition toner, more commonly known as

"MICR ink," causes the characters printed in this ink or toner to become magnetized, emitting a magnetic signal that identifies each unique character.

      b. Developed in the mid-1950s, MICR ink alleviates the burden associated with the manual processing of great volumes of checks and allows checks to be processed on special reader/sorter machines which magnetize the "MICR line," read the magnetic signals emitted, and purport to determine the authenticity of the check.

<u>THE CONSPIRACY</u>

      18.  From in or about 1999, and continuing thereafter through at least in or about March 2007, in the District of Columbia, the state of Maryland, the Commonwealth of Virginia and elsewhere, **KOUMBAIRIA, GLAY, TANTOH, JOHNSON, COLEMAN, YOKLEY,** and others both known and unknown to the Grand Jury, did unlawfully and knowingly combine, conspire, confederate and agree together and with each other to commit offenses against the United States, that are:

    A.    bank fraud, accomplished by their engaging in a scheme to defraud and obtain money and property from financial institutions by means of false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Sections 1344 and 2; and

    B.    wire fraud, accomplished by their engaging in a scheme to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises and for the purpose of executing, and attempting to execute the scheme to defraud, willfully causing to be transmitted wire communications in interstate commerce, in violation of Title 18, United States Code, Sections 1343 and 2.

## GOAL OF THE CONSPIRACY

19. The goal of the conspiracy was for the conspirators, GLAY, TANTOH, JOHNSON, COLEMAN, YOKLEY, and others both known and unknown to the Grand Jury, to unlawfully enrich themselves by fraudulently obtaining in excess of $1.6 million in monies from the following financial institutions: AM South Bank, Bank of America, BB&T Bank, CitiBank, M&T Bank, Provident Bank, SunTrust Bank, United Bank, Wachovia Bank, Certegy; certain liquor stores; and other retail establishments, by means of false and fraudulent pretenses, representations, and promises.

## MANNER AND MEANS OF THE CONSPIRACY

20. In order to achieve the goal of the conspiracy, conspirators, KOUMBAIRIA, GLAY, TANTOH, JOHNSON, COLEMAN, YOKLEY and others both known and unknown to the Grand Jury, used the following manner and means, among others:

A. Members of the conspiracy were organized on five levels: 1) the ring leader, who controlled the conspiracy; 2) the printers; 3) the recruiters; 4) corrupt bank and business insiders; and 5) the passers. Sometimes the lines between the different levels were not clearly delineated and persons on different levels would play more than one role.

1. The ring leader was conspirator KOUMBAIRIA, who organized the members of the conspiracy, obtained copies of genuine checks from various sources, printed counterfeit checks, taught others how to print counterfeit checks, gave out daily assignments in furtherance of the conspiracy and divided the daily proceeds among the conspirators.

2. The printers, including conspirators JOHNSON and GLAY, as well as other, unindicted conspirators, were responsible for printing the counterfeit checks.

6

3. The recruiters, including **TANTOH**, unindicted conspirators A and E, and others both known and unknown to the Grand Jury, were responsible for recruiting the passers.

4. The bank insiders, including unindicted conspirators D, F and I, were responsible for getting account information or providing the conspirators with copies of checks, which **GLAY** and **JOHNSON** would use to make the counterfeit checks.

5. The passers, including **COLEMAN** and **YOKLEY**, and numerous other unindicted conspirators, both known and unknown to the Grand Jury, were responsible for cashing counterfeit checks at banks, check cashing stores, and other retail establishments.

B. During the course of the conspiracy, the conspirators obtained account information from unwitting account holders at various banks in the following ways:

1. Conspirators **KOUMBAIRIA**, **GLAY**, and other unindicted conspirators, including unindicted conspirator A, recruited insiders or corrupt bank employees from various banks, including Provident Bank and SunTrust Bank, and caused the insiders to provide the conspirators with copies of legitimate checks, checking account numbers, and/or other checking account information such as routing numbers, account signatures, and balances of the accounts of various companies, businesses, organizations and individuals; or

2. By recruiting bank insiders, the conspirators were provided with the originals or copies of checks from various businesses to which the insiders had access because of their employment positions.

3. During the course of the conspiracy, **GLAY** would recruit individuals, such as **COLEMAN** and unindicted conspirator G, to allow him to open bank accounts in their names with the assistance of bank insider unindicted conspirator F. **GLAY** would then illegally obtain money

7

from these accounts or use account information obtained from unindicted conspirator ? to make counterfeit checks as follows:

      a. GLAY would have COLEMAN and other unindicted conspirators deposit counterfeit checks payable to COLEMAN into his account at Provident Bank or into the account of unindicted conspirator G. Thereafter, GLAY would withdraw the money from the accounts of COLEMAN and unindicted conspirator G, giving them both a portion of the proceeds; or

      b. Conspirator GLAY would also deposit counterfeit checks into unindicted conspirator G's account and then make checks payable to COLEMAN, drawn on the account of unindicted conspirator G, in order to launder unindicted conspirator G's counterfeit proceeds. Thereafter, GLAY would withdraw the money from COLEMAN's account, giving him a portion of the proceeds.

      c. In addition, unindicted conspirator F would provide conspirator GLAY with account information from several Provident Bank customers, including signature cards and copies of checks of Provident account holders, which conspirator KOUMBAIRIA and GLAY used to make counterfeit checks.

      C. In order to make the counterfeit checks and to achieve the goals of the conspiracy, the conspirators would use Magnetic Ink Character Recognition more commonly known as "MICR" ink to print the characters found at the bottom of checks.

      D. In addition to the use of the MICR ink, it was part of the conspiracy that the conspirators would use computers, check stock, scanners, and printers to make counterfeit checks drawn on the accounts of the individuals, corporations, and businesses from which such account information was obtained, as noted above.

E.  It was part of the conspiracy that the conspirators would purchase their MICR ink from Advantage Technical Services, where unindicted conspirator E was once employed, as it was less expensive than that sold at other office supply stores because the cartridges in which the ink was stored were recycled.

F.  It was a part of the conspiracy that the conspirators obtained money from compromised accounts or the accounts on which the counterfeit checks were drawn in one of the following manners:

1.  The recruiter conspirators would recruit by various means persons perceived by them to be addicted to drugs or otherwise in need of cash. They would entice them to join the conspiracy by offering a way to make cash quickly. The recruiter conspirator would explain to them that even if they were caught passing the counterfeit check that it would be unlikely that they would ever be incarcerated.

2.  The recruiters would next obtain the names and addresses of the passers and, at times, forms of identification such as their driver's licenses. This information was, in turn, provided to the printers who printed the counterfeit checks made payable to the passers.

3.  The recruiters would obtain the counterfeit checks in the names of the passers from the printers and then drive the passers around to various banks, check cashing establishments, and/or retail establishments, where the recruiters would direct the passers to cash the checks while the recruiter waited outside.

4.  When the passers left the establishments, the recruiters would be waiting outside to retrieve the money.  The recruiter would in turn give the passers a small portion of the cash proceeds.

9

5. The conspirators would also fraudulently retrieve money from bank accounts by opening accounts in the names of lower level conspirators or by using an existing account of a lower level conspirator into which they would deposit counterfeit checks in large dollar amounts.

6. The conspirators would then have checks made out to passers who would in turn cash checks on the accounts against the counterfeit check before the fraudulent nature of the check was discovered.

7. Again, when the passers left the bank or check cashing establishments, the recruiter would be waiting outside to retrieve the money. The recruiter would in turn give the passer a small portion of the cash proceeds.

G. In order to achieve the goal of the conspiracy, KOUMBAIRIA, GLAY, TANTOH, JOHNSON, and other unindicted conspirators would regularly meet at KOUMBAIRIA's home located at 5125 8th Street, N.W., Washington, D.C., where they would discuss their daily plans for their illegal enterprise.

1. At such meetings, the printers would distribute the checks to be cashed for the day. The checks would be made out to the passers whose information had been provided to them by the recruiters the day before.

2. Passers and the insiders generally would not attend meetings at this location. Rather they would be paid their small share of the fraudulently obtained funds immediately after they had cashed a counterfeit check.

H. At the end of the day, KOUMBAIRIA, GLAY, TANTOH, JOHNSON, and other unindicted conspirators, would again meet at the home of KOUMBAIRIA, where they would give the day's proceeds to KOUMBAIRIA, who would in turn divide the proceeds among the

10

conspirators present in his home. Also at these meetings, the recruiters would give the printers the names of the passers they planned to use the following day.

I.    It was a further part of the conspiracy that, in order to protect the proceeds thereof, **KOUMBAIRIA** possessed a .45 caliber Hi-Point automatic pistol, which he often displayed to conspirators with whom he met in his home.

J.    It was a further part of the conspiracy that in order to carry out their scheme to make money **KOUMBAIRIA**, **GLAY**, **JOHNSON**, and other unindicted conspirators would make the counterfeit checks with the special magnetized MICR ink, thereby causing information to be transmitted by wire, across interstate lines between Certegy and federally-insured banks, check cashing businesses, and other retail establishments whenever the passers would cash a counterfeit check.

## OVERT ACTS

In furtherance of the above-described conspiracy and in order to carry out the objects thereof, within the District of Columbia and elsewhere, **KOUMBAIRIA**, **GLAY**, **TANTOH**, **JOHNSON**, **COLEMAN**, **YOKLEY** and others, both known and unknown to the Grand Jury, committed the following overt acts, among others:

### Recruitment of Passers by Coconspirators

21.    Sometime in or about the year of 1999, conspirator **JOHNSON** recruited unindicted conspirator A to become a part of the conspiracy.

22.    Between in or about 1999 and in and about 2003, **JOHNSON**, in turn, introduced unindicted conspirator A to other conspirators, both indicted and unindicted, who began to use conspirator A as a passer.

11

23. On or about May 7, 2003, within the District of Columbia, unindicted conspirator A attempted to cash a counterfeit check drawn on the account of the International House of Pancakes at the SunTrust Bank, in the amount of $404.05, using a false identification in the name of a person other than his or her own, by certifying to an employee at Guilford Liquors that this check was true and genuine.

24. In or about December 2005, **KOUMBAIRIA** recruited unindicted conspirator B to become a part of the conspiracy as a passer.

25. On or about January 12, 2006, within the District of Columbia, unindicted conspirator A cashed a counterfeit check drawn on the account of Discovery Communications at SunTrust Bank, in the amount of $678.21, by certifying to an employee at Y & Y Liquors that this check was true and genuine.

26. On or about February 13, 2006, within the District of Columbia, unindicted conspirator A cashed a counterfeit check drawn on the account of Howard University at the Bank of America, in the amount of $891.25, by certifying to an employee at Mart Liquor Store that this check was true and genuine.

27. On or about April 14, 2006, within the District of Columbia, unindicted conspirator A cashed a counterfeit check drawn on the account of Discovery Communications, at SunTrust Bank, in the amount of $697.25, by certifying to an employee at Wheeler Liquors that this check was true and genuine.

28. In or about November 2005, a person who called himself **HOLYFIELD**, later determined to be conspirator **EDWIN T. TANTOH**, met unindicted conspirator C at a bar in the state of Maryland.

29. After meeting him, eventually TANTOH recruited conspirator C to become a member of the conspiracy by causing unindicted conspirator C to agree to allow him to wire $20,000 into unindicted conspirator C's bank account at the Bank of America, in exchange for TANTOH'S promise to pay unindicted conspirator C $10,000.

30. In or about January 2006, unindicted conspirator I gave unindicted conspirator H a genuine check drawn on the account of State Plaza Hotel which unindicted conspirator I had stolen from the State Plaza Hotel.

31. In or about January 2006, unindicted conspirator H gave the stolen State Plaza Hotel check referred to above in paragraph 30 to conspirator KOUMBAIRIA.

32. In or about January 2006, in the District of Columbia, conspirator KOUMBAIRIA created a counterfeit check drawn on the account of State Plaza Hotel at the Bank of America in the amount of $47,357.14.

33. In or about January 2006, conspirator KOUMBAIRIA gave that counterfeit State Plaza Hotel check to conspirator TANTOH.

34. Unbeknownst to unindicted conspirator C, on or about January 23, 2006, TANTOH caused to be transferred into unindicted conspirator C's account at the Bank of America, a counterfeit check in the amount of $47,357.14, drawn on the account of State Plaza Hotel.

35. Conspirator TANTOH caused the check referred to in paragraph 34 to be deposited into unindicted conspirator C's account, in the amount of $47,357.14, rather than wire $20,000, as he had initially promised unindicted conspirator C.

36. In or about January 2006, conspirator TANTOH caused unindicted conspirator C to withdraw $18,000 from unindicted conspirator C's account at the Bank of America, in the form of

two cashier's checks for $9,000 each – one of which was made out to conspirator **TANTOH**'s girlfriend and the other was made payable to a person known to the Grand Jury, who in turn gave the proceeds to unindicted conspirator C.

37.  Thereafter,  **TANTOH** and **KOUMBAIRIA**  caused several different passers to withdraw the rest of the money from the account of unindicted conspirator C.

38. Thereafter, on or about February 17, 2006, **TANTOH**, again unbeknownst to unindicted conspirator C, deposited another check for $47,357.14 into unindicted conspirator C's account at the Bank of America.

## Purchase of Micr Ink

39.  After leaving the employment of Advantage Technical Services in Silver Spring, Maryland, unindicted conspirator E, on several occasions, returned to the establishment to purchase various supplies, including MICR ink cartridges.

40.  In or about 2003, conspirator **JOHNSON** approached one of the owners of Advantage, claiming to be the cousin of unindicted conspirator E, who used to work at the store, and requested a discount on a MICR ink cartridge.

41.  On several occasions between on or about January 8, 2003, and in or about the summer of 2006, **JOHNSON** returned to Advantage to purchase MICR ink.

42.  Between in or about 2003 and in or about 2006, conspirator **KOUMBAIRIA** and unindicted conspirator A would periodically go to Advantage Technical Services to purchase MICR ink.

## Recruitment of Bank Insiders

### Provident Bank

43.  In or about the beginning of 2006, GLAY recruited unindicted conspirator F, a bank teller at Provident Bank in Germantown, Maryland, to become a member of the conspiracy.

44.  In or about the beginning of 2006, GLAY convinced unindicted conspirator F to give him information on the accounts of various bank customers, including the account numbers, addresses, signatures, and routing numbers, which KOUMBAIRIA and others would use to make counterfeit checks.

45.  In or about the summer of 2006, GLAY, caused unindicted conspirator F to allow him to open up an account in the name of    COLEMAN and another unindicted conspirator at the Germantown, Maryland, branch of the Provident Bank.

46.  In or about September 2006, conspirator    COLEMAN provided GLAY with his driver's license and other information needed to open up the account in his name at the Germantown, Maryland branch of the Provident Bank.

47.  On or about September 30, 2006, with the assistance of unindicted conspirator F, conspirator GLAY opened an account in the name of COLEMAN at the Germantown, Maryland, branch of the Provident Bank.

48.  On or about September 30, 2006, with the assistance of unindicted conspirator F, conspirator GLAY opened a second account in the name of unindicted conspirator G at the Germantown, Maryland, branch of the Provident Bank

49.  On or about September 14, 2006, in Rockville, Maryland, conspirator    COLEMAN, cashed a counterfeit check drawn on the account of Got-V-Mail at the Bank of America, in the

amount of $2,492.00, at the Shady Grove Road branch of Provident Bank against his Provident Bank account.

50. On or about September 14, 2006, in Rockville, Maryland, conspirator COLEMAN cashed a counterfeit check drawn on the account of Got-V-Mail at the Bank of America, in the amount of $2,497.67, at the Washington Street branch of Provident Bank, which was cashed against conspirator COLEMAN's Provident bank account.

51. On or about December 6, 2006, an unindicted conspirator deposited check number 105, drawn on the account of unindicted conspirator G, at Provident Bank in the amount of $3,500 into the account of COLEMAN at Provident Bank.

52. On or about December 7, 2006, an unindicted conspirator deposited check number 107, drawn on the account of unindicted conspirator G, at Provident Bank in the amount of $3,480 into the account of COLEMAN at Provident Bank.

### SunTrust Bank

53. In or about June 2006, and continuing up to in or about July 2006, KOUMBAIRIA met unindicted conspirator D, a bank insider at SunTrust Bank, in and around the District of Columbia, and caused unindicted conspirator D to join the conspiracy, by informing unindicted conspirator D that it could make money with little risk of incarceration by providing conspirator KOUMBAIRIA with copies of legitimate checks, checking account numbers, and other checking account information of various bank companies, businesses, and organizations, such as Pioneer Builders, Inc., Focused Management, Inc., and D&D Tire Company, all of which were SunTrust customers.

54. On or about June 6, 2006, a person known to the Grand Jury cashed legitimate check number 6089 drawn on the SunTrust account of Focused Management, Inc. The memo line of the check included the notation "CT Services performed - 5/06/06 - 5/19/06; 64 hours @."

55. At the insistence of KOUMBAIRIA, on or about June 6, 2006, unindicted conspirator D accessed the SunTrust account information of Focused Management, Inc. to determine the amount of funds available and to ensure that there was no "red flag" indicating that the banking authorities were aware that the account had been compromised.

56. In or about June 2006, unindicted conspirator D provided a copy of check number 6089 to KOUMBAIRIA, who used it to create counterfeit checks.

57. On or about June 7, 2006, a counterfeit check in the amount of $2,496.70, drawn on the account of Focused Management, Inc., was passed at 1571 Alabama Avenue, S.E., Washington, D.C. The memo line on the counterfeit checks had the same notation reflected on the legitimate check that unindicted conspirator D had cashed the day before.

58. On or about June 7, 2006, a counterfeit check in the amount of $2,492.30, drawn on the account of Focused Management, Inc., was passed at 1275 K Street, N.W., Washington, D.C. The memo line on the counterfeit check had the same notation reflected on the legitimate check that unindicted conspirator D had cashed the day before.

59. On or about June 7, 2006, a counterfeit check in the amount of $2,491.00, drawn on the account of Focused Management, Inc., was passed at 1100 Connecticut Avenue, N.W., Washington, D.C. The memo line on the counterfeit check had the same notation reflected on the legitimate check that unindicted conspirator D had cashed the day before.

17

60. On or about June 7, 2006, a counterfeit check in the amount of $2,498.00, drawn on the account of Focused Management, Inc., was passed at 1445 New York Avenue, N.W., Washington, D.C. The memo line on the counterfeit check had the same notation reflected on the legitimate check that unindicted conspirator D had cashed the day before.

61. On or about June 7, 2006, a counterfeit check in the amount of $2,494.00, drawn on the account of Focused Management, Inc., was passed at 2929 M Street, N.W., Washington, D.C. The memo line on the counterfeit check had the same notation reflected on the legitimate check that unindicted conspirator D had cashed the day before.

## Protection of the Proceeds of the Conspiracy

62. On or about March 6, 2007, coconspirator KOUMBAIRIA possessed a .45 caliber Hi-Point automatic pistol in his home in order to protect himself and the proceeds of the conspiracy.

(Conspiracy, in violation of Title 18 United States Code, Section 1349)

NOT YOKLEY

## COUNT TWO - WIRE FRAUD

1. Paragraphs one through seventeen and twenty through sixty-two of Count One of this Indictment contain the description of the following scheme and are re-alleged and incorporated by reference as if set out in full.

2. From in or about June 2006, through in or about July 2006, within the District of Columbia and elsewhere, the defendants KOUMBAIRIA, GLAY, TANTOH, JOHNSON and others both known and unknown to the Grand Jury, devised and intended to devise, and aided and abetted a scheme or artifice to defraud SunTrust and other businesses, corporations, and individuals by making, depositing, and cashing counterfeit checks, and causing the transmission of a wire communication in interstate commerce, consisting of information regarding the accounts upon which

18

the counterfeit checks were drawn in order to carry out the scheme or artifice, as is more fully described below.

3. The main frame computer terminal for SunTrust Bank is located at 8303 Peachtree Street, Atlanta, Georgia.

4. Each time a check is cashed at any SunTrust Branch within the United States, or each time any SunTrust account is accessed for any purpose within the United States, including to make an inquiry of available funds or to access other account information, the inquiry and the response are routed via computer between the location where the account is accessed and the main frame computer terminal in Atlanta, Georgia.

5. During the months of June and July 2006, defendant KOUMBAIRIA caused Individual D to compromise the accounts of 15 SunTrust business clients by accessing the client account information, and/or providing defendant KOUMBAIRIA with a copy of a legitimate check drawn on each client's account, enabling defendant KOUMBAIRIA to produce counterfeit checks to be drawn and passed on each client's account. In total, 76 counterfeit checks were passed and drawn on the accounts of SunTrust customers in the Washington, D.C. area, resulting in a loss of $99,210.38 to SunTrust Bank and other retail establishments.

6. As part of the scheme and artifice, defendant KOUMBAIRIA met with Individual D in the District of Columbia to retrieve copies of the checks and/or information on the accounts of SunTrust customers. At those times, defendant KOUMBAIRIA asked Individual D to check the accounts on SunTrust's computer system to ascertain the number of next check. Defendant KOUMBAIRIA also caused Individual D to determine how much money was in the account, so he would know for how much he could make the counterfeit check.

19

7. As a direct result of his request in the District of Columbia, defendant **KOUMBAIRIA** caused Individual D to access the information on the compromised accounts from SunTrust's computer and to provide the information to defendant **KOUMBAIRIA**, who in turn made the counterfeit checks on his computer in his home in the District of Columbia. Thereafter, either **KOUMBAIRIA, GLAY, TANTOH, JOHNSON**, and/or other persons both known and unknown to the Grand Jury, would give the counterfeit checks to passers to cash.

8. On or about the dates listed below, for the purpose of executing and attempting to execute, and aiding and abetting the execution of the above-described scheme to defraud, defendant **KOUMBAIRIA**, while in the District of Columbia, did willfully cause unindicted Individual D to access SunTrust Bank's computer, and therefor cause to be transmitted in interstate commerce from the state of Maryland to the state of Georgia, by means of a wire communication, certain signs and signals, that is, computer inquiries of bank account information for the below-listed SunTrust bank accounts:

| Date Account Accessed | Name of Business Account | Number of Checks | Loss Amount |
|---|---|---|---|
| 6/6/06 (3 times) | Focused Management Inc. | 5 | $12,472.00 |
| 6/19/06 (5 times) | D & D Tire Company | 5 | $5,970.03 |
| 6/29/06 (2 times) | St. Thomas More Dialysis Center | 10 | $9,959.00 |
| 7/1/06 (3 times) | Luna Concrete | 3 | $4,484.55 |
| 7/6/06 (3 times) | Pioneer Builders, Inc. | 4 | $5,982.97 |
| 7/7/06 (7 times) | Phenix Solution | 4 | $5,633.02 |
| 6/29/06 (3 times) | Conway Corporation | 2 | $2,987.42 |
| 6/29/06 (3 times) | JA Construction Company | 2 | $2,984.80 |
| 6/28/06 (7 times) | NNA, Incorporated | 9 | $12,915.00 |

| 6/17/06 (1 time) | Ortiz Construction Company | 1 | $1,491.00 |
| 6/29/06 (8 times) | Quality Elevator Company | 3 | $4,459.62 |
| 7/7/06 (1 time) | Rand Construction Company | 8 | $10,574.77 |
| 7/6/06 (2 times) | Rockingham Construction Company | 3 | $2,882.60 |
| 7/7/06 (3 times) | Town of Bladensburg | 2 | $2,993.40 |
| 6/21/06 (9 times) | Freedom Restoration | 13 | $12,542.20 |

**(Wire Fraud, Aiding and Abetting, Causing an Act to be Done,
in violation of Title 18, United States Code, Sections 1343, 2)**

## COUNT THREE - BANK FRAUD

### Bank of America

1. Paragraphs one through seventeen and twenty through sixty-two of Count One of this Indictment contain the description of the following scheme and are re-alleged and incorporated by reference as if set out in full.

2. From in or about January 2006, through in or about December 2006, within the District of Columbia and elsewhere, KOUMBAIRIA, GLAY, TANTOH, JOHNSON, YOKLEY, and others both known and unknown to the Grand Jury, executed and intended to execute a scheme or artifice, or attempted to execute a scheme or artifice, and aided and abetted the execution of the scheme or artifice, or the attempt to execute the scheme or artifice to defraud Bank of America, a financial institution, in order to obtain money owned by and under the custody and control of Bank of America by means of false and fraudulent pretenses, representations, and promises.

3. At all times material to this indictment, Bank of America was a financial institution whose assets were insured by the Federal Deposit Insurance Corporation.

4. The main frame computer terminal for Bank of America is located at 100 North Tryon Street, Bank of America Corporate Center, Charlotte, North Carolina.

21

5. Each time a check is cashed on an account at any Bank of America branch throughout the United States, or each time any Bank of America account is accessed for any purpose throughout the United States, including to make an inquiry of available funds or to access other account information, the inquiry and the response is routed via computer between the location where the account is accessed, including in the District of Columbia, and the main frame computer terminal in Charlotte, North Carolina.

6. KOUMBAIRIA, YOKLEY, and/or others both known and unknown to the Grand Jury, for the purpose of executing, and attempting to execute and aiding and abetting the execution of the above-described scheme, either cashed or attempted to cash, or caused each of the following checks to be cashed or attempted to be cashed in the District of Columbia, or they caused the checks to be stolen, and either counterfeited them, or caused them to be counterfeited in the District of Columbia. The total loss amount associated with counterfeit checks drawn on the accounts of customers of the Bank of America was $392,351:

| Payor | Date of Check | Payee | Amount |
|---|---|---|---|
| Citrix Online LLC | 2/17/06 | Terence Ward | $48,556 |
| Fasone Garrett Boehm | 3/3/06 | Otis Brady | $1,471.56 $1,455.20 |
| Fasone Garrett Boehm | 3/3/06 | Charles Butler | $1,453.50 |
| Fasone Garrett Boehm | 3/3/06 | Shanelle Sims | $1,457.15 $1,453.52 |
| Fasone Garrett Boehm | 3/3/06 | Corvette Randolph | $1,491.10 $1,457.32 |
| Fasone Garrett Boehm | 3/3/06 | Otis Brady | $1,458.22 |
| Fasone Garrett Boehm | 3/3/06 | Almeta Calloway | $1,479.23 $1,451.17 |

| Fasone Garrett Boehm | 3/3/06 | Shamika Balogun | $1,281.17<br>$1,381.17 |
| Fasone Garrett Boehm | 3/3/06 | **KENYA YOKLEY** | $953.12<br>$955.12<br>$957.16<br>$952.04 |
| Fasone Garrett Boehm | 3/3/06 | Tagman Mohamed | $951.07<br>$953.07<br>$953.17<br>$953.12 |
| Fasone Garrett Boehm | 3/3/06 | Eyob Fetene | $4,997.42 |
| Got-V-Mail | 9/8/06 | Daniel Santiago | $1,491.00<br>$1,492.00 |
| Hotel Lombardy | 2/12/06 | George Washington | $87,400.00 |
| Hotel Lombardy | 3/10/06 | Fithawi Amdemicheal | $46,562.75 |
| Hotel Lombardy | 3/14/06 | Kevin Gross | $57,610.00 |
| Howard University | | Jamaal Maroelle | $995.22 |
| Howard University | 2/2/06 | Helena Chappell | $1,491.75 |
| Howard University | 2/2/06 | Julian Valero, Jr. | $1,492.35 |
| Howard University | 2/2/06 | Edward Davis-Bey | $695.25 |
| Howard University | 2/2/06<br><br>1/10/06 | Angela Lancaster | $1,496.15<br>$1,497.35<br>$1,284.50 |
| Howard University | 2/10/06 | Nazir Shid | $891.25 |
| Howard University | 2/10/06 | Marques Glascoe | $1,595.68 |
| Orbis Marketing | 6/24/06 | Henry Vasquez | $907.39 |
| Orbis Marketing | 7/24/06 | Norweena Thomas | $901.25 |
| Orbis Marketing | 8/21/06 | Tagman Mohamed | $1,494.10 |
| Rainmakers International | 9/15/06 | Jermaine Tolover | $2,496.00<br>$2,492.00 |
| Safe Guard Pest Control | 2/24/06 | Saiydah Hipps | $492.75 |

| Safe Guard Pest Control | 2/24/06 | Lisa Jones | $792.75 |
| Select Comfort Retail | 8/21/06 | Tagman Mohamed | $1,456.07 |
| St. Louis Regional Chamber & Growth (RCGA) | 7/24/06 7/26/06 | Eyob Fetene | $997.16 $995.00 |
| St. Louis Regional Chamber & Growth (RCGA) | 7/26/06 | Tagman Mohamed | $997.00 |
| State Plaza Hotel | 1/23/06 | Terence Ward | $47,357.14 |
| State Plaza Hotel | 2/10/06 | Jamaal Marcelle | $995.50 |
| State Plaza Hotel | 2/10/06 | Angela Lancaster | $1,284.50 |
| Superfriends Marketing & Promotion Group | 3/6/06 | Shanelle Simms | $1,452.70 $1,455.30 |
| Superfriends Marketing & Promotion Group | 3/6/06 | Wanda Howell (no copy of check) | $1,453.71 |
| Tech Support Services | 3/24/06 | Patrice Dupree | $998.32 |
| Tech Support Services | 3/24/06 | Robert Dancy | $995.25 |
| The Arc of Montgomery County, Inc. | 12/20/06 | Jose Sumear | $1,452.00 |
| The Arc of Montgomery County, Inc. | 12/20/06 | Darnita McPhail | $1,453.00 |
| The Arc of Montgomery County, Inc. | 12/20/06 | Barbara Beasley | $1,457.00 $1,476.00 |
| The Arc of Montgomery County, Inc. | 12/20/06 | Terence Bethea | $2,457.00 $2,451.00 $2,457.00 $2,455.00 $2,455.00 |
| The Arc of Montgomery County, Inc. | 12/20/06 | Shanay Teeter | $1,453.00 |
| The Arc of Montgomery County, Inc. | 12/20/06 | Phillip Clark | $1,454.00 $1,455.00 $2,453.00 |
| The Arc of Montgomery County, Inc. | 12/20/06 | Danlyom Tesfaye | $2,455.00 $2,457.00 |

| Vador Ventures | 5/5/06 | Lisa Gray (No copy of check but cashed in D.C.) | $1,455.35 $1,492.75 |
| Vador Ventures | 5/5/06 | Gilbert Spence | $1,454.05 $1,456.07 |
| Vador Ventures | 5/5/06 | Phillip Green | $1,485.91 $1,457.43 |
| Vador Ventures | 5/5/06 | Richol Griner | $1,451.20 |
| Vador Ventures | 5/5/06 | Katia Mayberry | $1,452.50 |
| Vador Ventures | 5/5/06 | Darryl McCoy | $692.35 |

**(Bank Fraud, Aiding and Abetting, Causing an Act to be Done, in
violation of Title 18, United States Code, Sections 1344, 2)**

## COUNT FOUR - BANK FRAUD

### Wachovia Bank

1. Paragraphs one through seventeen and twenty through sixty-two of Count One of this Indictment contain the description of the following scheme and are re-alleged and incorporated by reference as if set out in full.

2. From in or about July 2004, through in or about November 2006, within the District of Columbia and elsewhere, KOUMBAIRIA, GLAY, TANTOH, JOHNSON, YOKLEY, and others both known and unknown to the Grand Jury, executed and intended to execute a scheme or artifice, or attempted to execute a scheme or artifice, and aided and abetted the execution of the scheme or artifice, or the attempt to execute the scheme or artifice to defraud Wachovia Bank, a financial institution in order to obtain money owned by and under the custody and control of Wachovia Bank by means of false and fraudulent pretenses, representations and promises.

3. At all times material to this indictment, Wachovia Bank was a financial institution whose assets were insured by the Federal Deposit Insurance Corporation.

4. The main frame computer terminal for Wachovia Bank is located at 1524 West W.T. Harris Boulevard, Charlotte, North Carolina.

5. Each time a check is cashed on an account at any Wachovia Bank branch within the United States, or each time any Wachovia Bank account is accessed for any purpose throughout the United States, including to make an inquiry of available funds or to access other account information, the inquiry and the response is routed via computer between the location where the account is accessed, including in the District of Columbia, and the main frame computer terminal in Charlotte, North Carolina.

6. Each of the following checks were cashed or attempted to be cashed in the District of Columbia. They were cashed or attempted to be cashed or were caused to be cashed or attempted to be cashed by, KOUMBAIRIA, GLAY, TANTOH, JOHNSON, COLEMAN, and others both known and unknown to the Grand Jury, for the purpose of executing, and attempting to execute, and aiding and abetting the execution of the above-described scheme. The total loss amount associated with counterfeit checks drawn on the accounts of customers of the Wachovia Bank was $126,321.15:

| Payor | Date of Check | Payee | Amount |
|---|---|---|---|
| Access Worldwide | 12/5/05 | Carl Lee | $695.35<br>$795.35<br>$895.35 |
| Access Worldwide | 12/5/05<br>12/16/05 | Nasir Shid | $690.75<br>$490.75<br>$775.15 |
| Access Worldwide | 12/9/05 | Charles Carter | $791.61 |
| Access Worldwide | 12/5/05 | William R.Cobb | $672.95<br>$772.95 |

| Access Worldwide | 12/5/05<br>12/9/05 | Lyndell Fribbley | $891.42<br>$894.51<br>$894.51 |
|---|---|---|---|
| Access Worldwide | 12/9/05 | Angela J. Lancaster | $896.03 |
| Access Worldwide | 12/9/05 | Veronica Walker | $872.15 |
| Access Worldwide | 12/9/05 | Fitsum Berhane | $798.45<br>$898.45 |
| Access Worldwide | 12/9/05 | Edward Davis-Bey | $895.10<br>$898.07<br>$898.07 |
| Access Worldwide | 12/9/05 | Kevin Walker | $894.35 |
| Access Worldwide | 12/9/05 | Henry Reed Anderson, Jr. | $891.75 |
| Access Worldwide | 12/9/05 | Darryl Byars | $893.41 |
| Access Worldwide | 12/9/05 | Nimha Burrow | $845.69 |
| Best Western Falls Church Inn | 4/27/06 | Gilbert M. Spence | $1,493.25 |
| Best Western Falls Church Inn | 4/27/06 | Phillip D. Green | $1,492.45<br>$1,495.15 |
| Fort Myer Construction Corp | 7/6/06 | Percival Pendergrass | $4,729.73<br>$2,759.53 |
| Fort Myer Construction Corp | 7/6/06 | Shaka Lee | $2,479.23<br>$2,649.73 |
| Home Depot | 11/22/06<br>8/16/06<br>10/21/06<br>10/28/06<br>10/18/06 | Nasir Shid<br>Nasir Shid<br>Nazir Shid<br>Nazir Shid<br>Nazir Shid | $446.82<br>$446.82<br>$479.52<br>$789.52<br>$485.56 |
| Home Depot | 10/20/05<br>10/28/05 | Edward D. Bey<br>Edward Davis-Bey<br>Edward D. Bey | $496.31<br>$698.61<br>$797.06<br>$697.06 |
| Home Depot | 10/28/05 | Elicia Trumpler | $992.13 |
| Home Depot | 10/28/05 | Cassandra L. Cunningham | $691.57 |

| Montgomery College | 5/9/04<br>6/15/04 | Adetunji Arojojoye | $9,850.25<br>$5,500.00 |
| Montgomery College | 11/5/04<br><br>11/10/04 | Veronica L. Wilson | $4,495.75<br>$4,491.81<br>$4,495.75<br>$4,495.75 |
| Montgomery College | 11/10/04 | Memunatn NH Jailoh | $4,491.81 |
| Montgomery College | 11/11/04 | Shantelle Braxton | $4,495.75<br>$4,495.75 |
| Montgomery College | 11/7/04<br>11/11/04 | Dishon Anderson | $4,495.75<br>$4,495.75<br>$4,495.75 |
| Pathways to Housing | 6/1/06<br><br>7/3/06 | Tyrone Hines | $596.00<br>$591.00<br>$898.00<br>$894.00 |
| Pathways to Housing | 7/3/06 | KENYA T. YOKLEY | $992.00<br>$996.00 |
| Pathways to Housing | 6/1/06<br>7/3/06 | Tagman A. Mohamed | $992.00<br>$995.00 |
| Pathways to Housing | 7/3/06 | Eyob D. Fetene | $997.00<br>$998.00 |
| Quality Build Maintenance | 12/3/05 | Isidorio Alexander Rubio | $2,454.52<br>$1,454.52 |
| Quality Build Maintenance | 12/30/05 | Kenneth Sloan | $2,455.27. |
| Quality Build Maintenance | 12/30/05 | Antwan Tyron Terry | $2,359.12 |
| Team Washington, Inc.<br>Domino's Pizza | 3/31/06<br>4/4/06 | James Michael Tate | $427.61<br>$427.61 |
| Team Washington, Inc.<br>Domino's Pizza | 4/10/06 | Lawrence McEachin | $486.32 |
| Team Washington, Inc.<br>Domino's Pizza | 1/21/05 | Jacqualine West | $496.00 |

28

| Tierco Maryland | 11/16/05 | Tommie Austin | $795.47 |
| Wahid Inc. T/A Portables | 1/11/06 | Veronica D. Walker | $2,491.12 |

**(Bank Fraud, Aiding and Abetting, Causing an Act to be Done,
in violation of Title 18, United States Code, Sections 1344, 2)**

## COUNTS FIVE THROUGH FOURTEEN - UTTERING
## THE SECURITIES OF A PRIVATE ENTITY

1. Paragraphs one through seventeen and twenty through sixty-two of Count One of this Indictment contain the description of the following scheme and are re-alleged and incorporated by reference as if set out in full.

2. In or about March 2006, within the District of Columbia, defendants **KOUMBAIRIA**, **YOKLEY**, and others both known and unknown to the Grand Jury, did knowingly make, utter and possess, counterfeited securities of Fasone Garrett Boehm, a Kansas-based advertising organization, with the intent to deceive Fasone Garrett Boehm.

3. In or about July 2006, within the District of Columbia, defendants **KOUMBAIRIA**, **YOKLEY**, and others both known and unknown to the Grand Jury, did knowingly make, utter and possess, counterfeited securities of Pathways to Housing, Inc., an organization to assist homeless people to obtain housing, with the intent to deceive Pathways to Housing.

4. In or about June 2006, within the District of Columbia, defendants **KOUMBAIRIA**, **YOKLEY**, and others both known and unknown to the Grand Jury, did knowingly make, utter and possess, counterfeited securities of Freedom Restoration, a faith-based, Christ-centered organization dedicated to helping families plagued by drug and alcohol addiction and abuse, with the intent to deceive Freedom Restoration.

5.  In or about June 2006, within the District of Columbia, defendants **KOUMBAIRIA**, **YOKLEY**, and others both known and unknown to the Grand Jury, did knowingly make, utter and possess, counterfeited securities of NNA, Inc., a Maryland-based defense contracting firm, with the intent to deceive NNA, Inc.

6.  In or about July 2006, within the District of Columbia, defendants **KOUMBAIRIA**, **YOKLEY**, and others both known and unknown to the Grand Jury, did knowingly make, utter and possess, counterfeited securities of St. Thomas Moore Dialysis Center, LLC a Maryland-based dialysis center, with the intent to deceive St. Thomas Moore Dialysis Center, LLC.

7.  On or about the dates listed below, in the District of Columbia, defendants **KOUMBAIRIA**, **YOKLEY**, and others both known and unknown to the Grand Jury, cashed and caused to be cashed the following checks of the aforementioned organizations, totaling $10,454.05, within the District of Columbia:

| COUNT | DATE | PAYOR | PAYEE | AMOUNT |
|-------|------|-------|-------|--------|
| **FIVE** | 3/3/06 | Fasone Garrett Boehm | KENYA N. YOKLEY | $993.12 |
| **SIX** | 3/3/06 | Fasone Garrett Boehm | KENYA N. YOKLEY | $995.12 |
| **SEVEN** | 3/3/06 | Fasona Garrett Boehm | KENYA N. YOKLEY | $997.16 |
| **EIGHT** | 3/3/06 | Fasone Garrett Boehm | KENYA N. YOKLEY | $952.04 |
| **NINE** | 7/3/06 | Pathways to Housing, Inc. | KENYA N. YOKLEY | $952.00 |

| TEN | 7/3/06 | Pathways to Housing, Inc. | KENYA N. YOKLEY | $916.00 |
| ELEVEN | 6/20/06 | Freedom Restoration | KENYA N. YOKLEY | $998.51 |
| TWELVE | 6/27/06 | NNA, Inc. | KENYA N. YOKLEY | $1,494.00 |
| THIRTEEN | 7/14/06 | St. Thomas More Dialysis Center, LLC | KENYA N. YOKLEY | $998.05 |
| FOURTEEN | 7/14/06 | St. Thomas More Dialysis Center, LLC | KENYA N. YOKLEY | $998.05 |

**(Uttering the Securities of a Private Entity and Causing an Act to Be Done, in violation of Title 18, United States Code, Sections 513 and 2)**

## COUNTS FIFTEEN AND SIXTEEN - UTTERING THE SECURITIES OF A PRIVATE ENTITY

1. Paragraphs one through seventeen and twenty through sixty-two of Count One of this Indictment contain the description of the following scheme and are re-alleged and incorporated by reference as if set out in full.

2. From in or about January 2006, within the District of Columbia and elsewhere, defendants KOUMBAIRIA, TANTOH, Individual C, Individual I, Individual H, and others both known and unknown to the Grand Jury, did knowingly make, utter, and/or possess, counterfeited securities of State Plaza Hotel, a Washington, D.C.-based, all-suite hotel organization, with the intent to deceive State Plaza Hotel.

3. From in or about February 2006, within the District of Columbia and elsewhere, defendants KOUMBAIRIA, TANTOH, Individual C, Individual I, Individual H, and others both known and unknown to the Grand Jury, did knowingly make, utter, and/or possess, counterfeited

securities of Citrix Online LLC, a Santa Barbara-based web organization, with the intent to deceive Citrix Online LLC.

4. On or about the dates listed below, in the District of Columbia and elsewhere, defendants KOUMBAIRIA, TANTOH, Individual C, Individual I, Individual H, and others both known and unknown to the Grand Jury, possessed, counterfeited and caused to be cashed, the checks of the aforementioned organizations, totaling $96,313.14, within the District of Columbia:

| COUNT | DATE | PAYOR | PAYEE | AMOUNT |
|-------|------|-------|-------|--------|
| FIFTEEN | 1/23/06 | State Plaza Hotel | Individual C | $47,357.14 |
| SIXTEEN | 2/17/06 | Citrix Online LLC | Individual C | $48,956.00 |

(Uttering the Securities of a Private Entity and Causing an Act to Be Done, in violation of Title 18, United States Code, Sections 513 and 2)

## FORFEITURE ALLEGATIONS

Forfeiture as to Count One:

1. Paragraphs one through sixty-two of Count One are re-alleged as though set forth fully herein and incorporated by reference for the purpose of alleging forfeiture to the United States of America pursuant to the provisions of Title 28, United States Code, Section 2461(c) (incorporating Title 18, United States Code, Section 981(a)(1)(C)).

2. As a result of the offense alleged in Count One of this Indictment, defendants KOUMBAIRIA, GLAY, TANTOH, JOHNSON, COLEMAN and YOKLEY shall forfeit to the United States any and all property, real or personal, constituting, or derived from, proceeds obtained directly or indirectly, as the result of the Conspiracy to commit Bank Fraud and Wire Fraud, in violation of Title 18, United States Code, Section 1349. Such property includes, but is not limited to: Money Judgment: $1,600,000, for which each defendant is jointly and severally liable, which

32

judgment represents a sum of money equal to an amount of proceeds, obtained directly or indirectly, from the conspiracy to commit bank and wire fraud, in violation of Title 18, United States Code, Section 1349.

3.    By virtue of the commission of the felony offense charged in Count One of this Indictment, any and all interest that the defendants have in the above-described property is vested in the United States and hereby forfeited to the United States pursuant to Title 28, United States Code, Section 2461(c). If any of the property described above as being subject to forfeiture, as a result of any act or omission of a defendant:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third person;

    c.    has been placed beyond the jurisdiction of the Court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property that cannot be subdivided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b)(1), incorporating by reference Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of a defendant up to the value of said property listed above as being subject to forfeiture.

(Criminal Forfeiture, in violation of Title 28, United States Code, Section 2461(c)
(incorporating Title 18, United States Code, Section 981(a)(1)(C)).)

**Forfeiture as to Count Two:**

1. Paragraphs one through eight of Count Two are re-alleged as though set forth fully herein and incorporated by reference for the purpose of alleging forfeiture to the United States of America pursuant to the provisions of Title 18, United States Code, Section 982(a)(2).

2. As a result of the offense alleged in Count Two of this Indictment, defendants **KOUMBAIRIA, GLAY, TANTOH,** and **JOHNSON** shall forfeit to the United States any and all property, real or personal, constituting, or derived from, proceeds obtained directly or indirectly, as the result of their scheme to commit Wire Fraud, in violation of Title 18, United States Code, Section 1343. Such property includes, but is not limited to: **Money Judgment: $99,210.38,** for which each defendant is jointly and severally liable, which judgment represents a sum of money equal to an amount of proceeds, obtained directly or indirectly, from the scheme to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

3. By virtue of the commission of the felony offense charged in Count Two of this Indictment, any and all interest that the defendants have in the above-described property is vested in the United States and hereby forfeited to the United States pursuant to Title 18, United States Code, Section 982(a)(2). If any of the property described above as being subject to forfeiture, as a result of any act or omission of a defendant:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third person;

    c.    has been placed beyond the jurisdiction of the Court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property that cannot be subdivided without difficulty;

34

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b)(1),

incorporating by reference Title 21, United States Code, Section 853(p), to seek forfeiture of any

other property of a defendant up to the value of said property listed above as being subject to

forfeiture.

 (Criminal Forfeiture, in violation of Title 18, United States Code, Section 981(a)(2).)

 Forfeiture as to Count Three:

 1. Paragraphs one through six of Count Three are re-alleged as though set forth fully herein

and incorporated by reference for the purpose of alleging forfeiture to the United States of America

pursuant to the provisions of Title 18, United States Code, Section 982(a)(2).

 2. As a result of the offense alleged in Count Three of this Indictment, defendants

KOUMBAIRIA, GLAY, TANTOH, JOHNSON, COLEMAN and YOKLEY shall forfeit to

Citrix Online LLC, a Santa Barbara-based web organization, any and all property, real or personal,

constituting, or derived from proceeds, obtained directly or indirectly, as the result of their scheme

to commit Bank Fraud, in violation of Title 18, United States Code, Section 1344. Such property

includes, but is not limited to: Money Judgment: $392,351, for which each defendant is jointly

and severally liable, which judgment represents a sum of money equal to an amount of proceeds,

obtained directly or indirectly, from the scheme to commit bank fraud, in violation of Title 18,

United States Code, Section 1344.

 3. By virtue of the commission of the felony offense charged in Count Three of this

Indictment, any and all interest that the defendants have in the above-described property is vested

in the United States and hereby forfeited to the United States pursuant to Title 18, United States

Code, Section 982(a)(2). If any of the property described above as being subject to forfeiture, as a

result of any act or omission of the defendant:

a.    cannot be located upon the exercise of due diligence;

b.    has been transferred or sold to, or deposited with, a third person;

c.    has been placed beyond the jurisdiction of the Court;

d.    has been substantially diminished in value; or

e.    has been commingled with other property that cannot be subdivided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b)(1), incorporating by reference Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendant up to the value of said property listed above as being subject to forfeiture.

(Criminal Forfeiture, in violation of Title 18, United States Code, Section 981(a)(2).)

Forfeiture as to Count Four:

1.    Paragraphs one through six of Count Four are re-alleged as though set forth fully herein and incorporated by reference for the purpose of alleging forfeiture to the United States of America pursuant to the provisions of Title 18, United States Code, Section 982(a)(2).

2.    As a result of the offense alleged in Count Four of this Indictment, defendants KOUMBAIRIA, GLAY, TANTOH, JOHNSON, and YOKLEY shall forfeit to the United States any and all property, real or personal, constituting, or derived from proceeds, obtained directly or indirectly, as the result of their scheme to commit Bank Fraud, in violation of Title 18, United States Code, Section 1344. Such property includes, but is not limited to: Money Judgment: $126,321.15, for which each defendant is jointly and severally liable, which judgment represents a sum of money equal to an amount of proceeds, obtained directly or indirectly, from the scheme to commit bank fraud, in violation of Title 18, United States Code, Section 1344.

3. By virtue of the commission of the felony offense charged in Count Four of this Indictment, any and all interest that the defendants have in the above-described property is vested in the United States and hereby forfeited to the United States pursuant to Title 18, United States Code, Section 982(a)(2). If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

a.  cannot be located upon the exercise of due diligence;

b.  has been transferred or sold to, or deposited with, a third person;

c.  has been placed beyond the jurisdiction of the Court;

d.  has been substantially diminished in value; or

e.  has been commingled with other property that cannot be subdivided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b)(1), incorporating by reference Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendant up to the value of said property listed above as being subject to forfeiture.

(Criminal Forfeiture, in violation of Title 18, United States Code, Section 981(a)(2).)

A TRUE BILL

FOREPERSON

_SEFFREY A. TAYLOR_
ATTORNEY FOR THE UNITED STATES IN
AND FOR THE DISTRICT OF COLUMBIA

37

# United States Secret Service
# Department of Homeland Security

**Philadelphia**

**SAIC Robert W. Slama**
7236 Federal Building
600 Arch Street
Philadelphia, PA 19106
Tele: 215-861-3300
Fax: 215-861-3311 & 215-861-3310

# Fax



| | | |
|---|---|---|
| **To:** Rich Lloret | **From:** Kelli Roger | |
| **Fax:** | **Pages:** 7 | |
| **Phone:** | **Date:** | |
| **Re:** | **CC:** | |

☐ Urgent   ☑ For Review   ☐ Please Comment   ☐ Please Reply   ☐ Please Recycle

◆ **Comments:**

Call 215-861-3300, USSS, w/ Questions.



# WARRANT FOR ARREST

CO-180 (Rev. 4/02)

| UNITED STATES DISTRICT COURT | FOR THE DISTRICT OF COLUMBIA |
|---|---|

| UNITED STATES OF AMERICA | DOCKET NO: | MAGIS. NO: |
|---|---|---|
| | CR-08-213-06 | |
| v. | NAME & ADDRESS OF INDIVIDUAL TO BE ARRESTED | |
| NAIBEYE KOUMBAIRIA | Kenya N. Yokley | |

| DOB:        PDID: | |
|---|---|
| WARRANT ISSUED ON THE BASIS OF:    INDICTMENT | DISTRICT OF ARREST |
| TO:    ANY UNITED STATES MARSHAL OR OTHER AUTHORIZED OFFICER | CITY |

**YOU ARE HEREBY COMMANDED to arrest the above-named person and bring that person before the nearest available Magistrate Judge to answer to the charge(s) listed below.**

## DESCRIPTION OF CHARGES

BANK FRAUD
WIRE FRAUD
CONSPIRACY
AIDING AND ABETTING CAUSING AN ACT TO BE DONE
UTTERING THE SECURITIES OF A PRIVATE ENTITY
CRIMINAL FORFEITURE

United States District Court
For the District of Columbia
A TRUE COPY
NANCY MAYER WHITTINGTON, Clerk

By _____

Deputy Clerk

| IN VIOLATION OF: | UNITED STATES CODE TITLE & SECTION: 18:1344; 1343; 1349; 2; 513; 982(a)(2) and 28: 2461(C) |
|---|---|

| BAIL FIXED BY COURT: | OTHER CONDITIONS OF RELEASE: |
|---|---|
| | |

| ORDERED BY: | SIGNATURE (JUDGE/MAGISTRATE JUDGE) | DATE ISSUED: |
|---|---|---|
| MAGISTRATE JUDGE ROBINSON | U.S. MAGISTRATE JUDGE ROBINSON | 7/17/08 |
| CLERK OF COURT: | BY DEPUTY CLERK: | DATE: |
| Nancy Mayer-Whittington | | 7/17/08 |

### RETURN

This warrant was received and executed with the arrest of the above-named person.

| DATE RECEIVED | NAME AND TITLE OF ARRESTING OFFICER | SIGNATURE OF ARRESTING OFFICER |
|---|---|---|
| DATE EXECUTED | | |
| HIDTA CASE:    Yes        No    X | | OCDETF CASE:    Yes    No    X |

AO 466 (Rev. 1/03) Waiver of Rule 40 Hearings

# UNITED STATES DISTRICT COURT

Eastern _____ **DISTRICT OF** _____ Pennsylvania ③

UNITED STATES OF AMERICA    **FILED**

v.

JUL 2 9 2008

MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk

Kenya N. Yokley
**Defendant**

## WAIVER OF RULE 40 HEARINGS
### (All Criminal Cases)

JUDGE:    Elizabeth T. Hey

CASE NUMBER:    08-972-M

I understand that charges are pending in the _____ District of _____ Columbia

alleging violation of _____ 18:1344; 18:1349; 18:2; 18:513 _____ and that I have been arrested in this district and

(Title and Section - Probation - Supervised Release)

taken before a United States magistrate judge, who has informed me of the charge(s) and my rights to:

(1)    retain counsel or request the assignment of counsel if I am unable to retain counsel;
(2)    an identity hearing to determine whether I am the person named in the charges;

- *Check one only* -

[ X ]    **ALL CASES EXCEPT PROBATION OR SUPERVISED RELEASE:**

(3)    a preliminary hearing (unless an indictment has been returned or information filed) to determine whether there is probable cause to believe an offense has been committed by me, the hearing to be held in this district or the district of prosecution; and
(4)    request transfer of the proceedings to this district under Rule 20, Fed. R. Crim. P., in order to plead guilty.

[ ]    **PROBATION OR SUPERVISED RELEASE VIOLATION CASES:**

(3)    a preliminary hearing (but only if I will be kept in custody, and only to be held in this district if the violation occurred here) to determine whether there is probable cause to believe a violation occurred; and
(4)    a hearing under Rule 32.1(a)(6), Fed. R. Crim. P., in which I have the burden of establishing my eligibility for release from custody.

### I HEREBY WAIVE (GIVE UP) MY RIGHT TO A(N):

( ✓ )   identity hearing

(   )   preliminary hearing

( X )   identity hearing and have been informed I have no right to a preliminary hearing

(   )   identity hearing but request a preliminary hearing be held in the prosecuting district and, therefore, consent to the issuance of an order requiring my appearance in the prosecuting district where the charges are pending against me.

_____    _____
July 22, 2008    *Defendant*
_____ *Date*

_____
*Defense Counsel*

UNITED STATES DISTRICT COURT
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

UNITED STATES OF AMERICA                                  :

v.                                                        :   CRIMINAL NO. 08-972

KENYA YOKLEY        FILED                                 :

WE, THE UNDERSIGNED, jointly and severally, acknowledge that we and our personal representatives are bound to pay to the United States of America the sum of

($ 100,000   O/R

The conditions of this bond are that the defendant above named is to appear before a judge or magistrate of the United States District Court for the Eastern District of Pennsylvania at Philadelphia, and at such other places as the defendant may be required to appear, in accordance with any and all orders and directions relating to the defendant's appearance in the above entitled matter as may be given or issued by a judge or magistrate of the United States District Court for the Eastern District of Pennsylvania, or of any other United States District Court to which the defendant may be removed or the cause transferred, and that the defendant is to abide by any judgment entered in such matter by surrendering himself to serve any sentence imposed and obeying any order or direction in connection with such judgment as the court imposing it may prescribe.

If the defendant appears as ordered and otherwise obeys and performs the foregoing conditions of this bond, then this bond is to be void, but if the defendant fails to obey or perform any of these conditions, payment of the amount of this bond shall be due forthwith. Forfeiture of this bond for any breach of its conditions may be declared by any judge or magistrate of any United States District Court having cognizance of the above matter at the time of such breach and, if the bond is forfeited and if the forfeiture is not set aside or remitted, judgment may be entered upon motion in such United States District Court against each debtor jointly and severally for the amount above stated, together with interest and costs, and execution may be issued and payment secured as provided by the Federal Rules of Criminal Procedure and by other laws of the United States.

It is agreed and understood that this is a continuing bond including any proceeding on appeal or review which shall continue in full force and effect until such time as the undersigned are duly exonerated.

This bond is signed on this   22nd   day of   July   , 20 08 , at Philadelphia, Pennsylvania.

Defendant _____    Address _____

Surety _____    Address _____

Surety _____    Address _____

SIGNED AND ACKNOWLEDGED before me this              22nd      day of   July   ,
20 08 .

BAIL SET at $ 100,000                                         _a. M. Blum_____
                                                            United States Magistrate
                                                            Or Deputy Clerk
BY: E. T. Hey    , MAGISTRATE                                United States District Court
☒ O.R.    ☐ 10% Cash   ☐ Cash   ☐ Surety                    Eastern District of Pennsylvania
☐ OTHER: _____

Date:

_____
Deputy Clerk / Deputy U.S. Marshal

CR 36 (1/00)

ORIGINAL - FOR CLERK, U.S.D.C.
PINK - FOR CLERK, U.S.D.C.
YELLOW - FOR DEFENDANT
BLUE - FOR PRETRIAL SERVICES
GREEN - FOR COURTROOM DEPUTY

FILED
JUL 23 2008
MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk

## Advice of Penalties and Sanctions

TO THE DEFENDANT:

YOU ARE ADVISED OF THE FOLLOWING PENALTIES AND SANCTIONS:

A violation of any of the foregoing conditions of release may result in the immediate issuance of a warrant for your arrest, a revocation of release, an order of detention, and a prosecution for contempt of court and could result in a term of imprisonment, a fine, or both.

The commission of a Federal offense while on pretrial release will result in an additional sentence of a term of imprisonment of of not more than ten years, if the offense is a felony; or a term of imprisonment of not more than one year, if the offense is a misdemeanor. This sentence shall be in addition to any other sentence.

Federal law makes it a crime punishable by up to 10 years of imprisonment, and a $250,000 fine or both to obstruct a criminal investigation. It is a crime punishable by up to ten years of imprisonment, and a $250,000 fine or both to tamper with a witness, victim or informant; to retaliate or attempt to retaliate against a witness, victim or informant; or to intimidate or attempt to intimidate a witness, victim, juror, informant, or officer of the court. The penalties for tampering, retaliation, or intimidation are significantly more serious if they involve a killing or attempted killing.

If after release, you knowingly fail to appear as required by the conditions of release, or to surrender for the service of sentence, you may be prosecuted for failing to appear or surrender and additional punishment may be imposed. If you are convicted of:

(1) an offense punishable by death, life imprisonment, or imprisonment for a term of fifteen years or more, you shall be fined not more than $250,000 or imprisoned for not more than 10 years, or both;

(2) an offense punishable by imprisonment for a term of five years or more, but less than fifteen years, you shall be fined not more than $250,000 or imprisoned for not more than five years, or both;

(3) any other felony, you shall be fined not more than $250,000 or imprisoned not more than two years, or both;

(4) a misdemeanor, you shall be fined not more than $100,000 or imprisoned not more than one year, or both.

A term of imprisonment imposed for failure to appear or surrender shall be in addition to the sentence for any other offense. In addition, a failure to appear or surrender may result in the forfeiture of any bond posted.

## Acknowledgment of Defendant

I acknowledge that I am the defendant in this case and that I am aware of the conditions of release. I promise to obey all conditions of release, to appear as directed, and to surrender for service of any sentence imposed. I am aware of the penalties and sanctions set forth above.

_____
Signature of Defendant

_____
Address

_____
City and State                    Telephone

## Directions to United States Marshal

(   ) The defendant is ORDERED released after processing.

(   ) The United States marshal is ORDERED to keep the defendant in custody until notified by the clerk or judicial officer that the defendant has posted bond and/or complied with all other conditions for release. The defendant shall be produced before the appropriate judicial officer at the time and place specified, if still in custody.

Date: _____    _____
                                                Signature of Judicial Officer

                                             _____
                                                Name and Title of Judicial Officer

DISTRIBUTION    COURT    DEFENDANT    PRETRIAL SERVICE    US ATTORNEY    US MARSHAL



# IN THE UNITED STATES OF AMERICA
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA          :          CRIMINAL NO.

V.                                :

KENYA YOKLEY          **FILED**          08-972-M

JUL 2 3 2008

MICHAEL E. KUNZ, Clerk

**ORDER SETTING CONDITIONS OF RELEASE**

By_____ Dep. Clerk

AND NOW, this 22d day of July , 2008, upon the agreement of counsel for both the government and the defendant, the following conditions of release are set:

    1. Bail is set in the amount of $100,000 O/R.

    2. Defendant shall report to Magistrate Judge Deborah Robinson's Courtroom on the Second Floor of the Federal Courthouse in the District of Columbia on Thursday, July 24, 2008.

    3. Defendant shall continue to reside at

    4. Defendant shall report to Pretrial Services as directed by Judge Robinson.

            BY THE COURT:

            _____
            ELIZABETH T. HEY
            UNITED STATES MAGISTRATE JUDGE

*467 (1/86) Order Holding Defendant*

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA

v.

KENYA N. YOKLEY

**ORDER HOLDING DEFENDANT TO ANSWER AND APPEAR IN DISTRICT OF PROSECUTION OR DISTRICT HAVING PROBATION JURISDICTION**

FILED

JUL 2 3 2008

MICHAEL ___ KUNZ, Clerk
By ___ Dep. Clerk

*Case Number:* 08-972-M

*Charging District*
*Case Number:* 08-213

*The defendant having appeared before this Court pursuant to Rule 40, Fed. R. Crim. P., and proceedings having been concluded and the defendant released;*

IT IS ORDERED that the defendant be held to answer in the United States District Court for the District of <u>Columbia</u> ; and shall appear at all proceedings as required.  The defendant shall next appear at (if blank, to be notified) <u>Magistrate Judge Deborah Robinson's Courtroom on the Second Floor of the Federal Courthouse in the District of Columbia</u>  on <u>Thursday, July 24, 2008</u>  .

_____
**Signature of Judicial Officer**

<u>7/22/08</u>
**Date**

**Elizabeth T. Hey, U.S.M.J.**
**Name and Title of Judicial Officer**

**\*Clerk of Court shall transfer all original documents in the above-captioned matter to the  District of Columbia**